UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT RUSSO,

                Plaintiff,

– against –

UNITED STATES OF AMERICA,

                Defendant.

**OPINION & ORDER**

20 Civ. 4999 (ER)

Ramos, D.J.:

    Robert Russo ("Russo") brings this suit under the Federal Tort Claims Act ("FTCA") alleging negligence by the Federal Bureau of Prisons ("BOP") of the United States Department of Justice ("DOJ"). Doc. 22. Pending before the Court is the government's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Doc. 23. Also pending before the Court is Russo's motion for jurisdictional discovery. Doc. 25. For the reasons set forth below, the government's motion is GRANTED and Russo's motion is DENIED.

**I.    BACKGROUND**

    **A.  Factual Background**

    The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). At all relevant times, Russo was an inmate at the Metropolitan Correctional Center ("MCC") in New York, New York. Doc. 22 ¶ 8. On July 10, 2017, Russo verbally confronted a fellow inmate for smoking K-2, which is a type of synthetic marijuana. *Id.* ¶ 11. K-2 can lead a user to "become violent and combative." *Id.* ¶ 13. The fellow inmate, who Russo believed to be under the influence

of K-2 at the time,[1] physically assaulted Russo in response to the verbal confrontation. *See Id*. ¶¶ 15-16.  As a result of the assault, Russo suffered critical injuries, including but not limited to facial fractures.  *Id*. ¶ 25.  Russo still experiences pain from his injuries and has had to receive extensive medical care, including surgery, in addition to enduring psychological stress from the incident.  *Id*. ¶ 27.

Russo alleges that, at the time of assault, BOP employees, who are responsible for supervising inmates at MCC, knew about the negative consequences of K-2 and knew that some inmates were smuggling K-2 into the facility.  *Id*. ¶¶ 12, 14, 18-19.  Only several months after it learned of the seriousness of the smuggling at MCC did BOP take steps to alleviate the "K-2 problem." *Id*. ¶ 20.  For example, before the assault, the BOP removed vending machines that some inmates had used to hide smuggled K-2.  *Id*. ¶¶ 12, 19-21.  Thus, Russo alleges that the BOP failed in its "duty of providing for the safety and security of inmates under [its] care" by failing to sufficiently address the problems around K-2 at MCC, such as screening people entering the jail or disciplining inmates for using K-2.  *Id*. ¶ 24.

In total, Russo alleges that his physical and psychological injuries resulted from the government's negligence in effectively addressing K-2 smuggling and use by inmates at MCC.  *Id*. ¶ 26.

### B. Procedural History

Russo filed a claim for money damages with the BOP on July 8, 2019, asserting claims under the FTCA.  *Id*. ¶ 4.  On January 3, 2020, the BOP denied Russo's claim.  *Id*. ¶ 5.

On June 30, 2020, within six months of the denial of his claim, Russo brought the instant suit.  Doc. 1.  On February 22, 2021, he filed an Amended Complaint.  Doc. 22.

---

[1] The Amended Complaint does not allege that Russo actually observed the inmate smoking K-2, nor does it state the basis for Russo's assertion that the inmate was under the influence of K-2.

On March 17, 2021, the government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim.  Doc. 23.  On April 5, 2021, Russo moved for jurisdictional discovery.  Doc. 25.

## II.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison,* 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *Attica Cent. Sch.,* 386 F.3d at 110 (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first,  *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,* 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011) (citations omitted), *aff'd,* 496 F. App'x 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction."  *Chambers v. Wright,* No. 05 Civ.

3

9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec.19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

### B. Analysis

The government alleges that there is no subject matter jurisdiction in this case because the discretionary function exception of the FTCA restricts any claim against the government. Doc. 24 at 7-8.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113 (citations omitted). As established by the FTCA, the United States consents to suit, and thus waives its sovereign immunity, in actions for money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b)(1); *see also Fountain v. Karim*, 838 F.3d 129, 131 (2d Cir. 2016). There is, however, an exception to that waiver known as the discretionary function exception. *See Needham v. U.S.*, No. 17 Civ. 05944 (ER), 2018 WL 3611944, at *2 (S.D.N.Y. July 27, 2018). The discretionary function exception shields the government from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." *Id.* (quoting 28 U.S.C. § 2680(a)).

In order to meet the discretionary function exception, the behavior of the government actor must, first, be "discretionary in nature" and, second, the conduct must be related to the purpose of the discretionary function exception, such as behaviors related to public policy. *U.S. v. Gaubert*, 499 U.S. 315, 322-25 (1991). In order to be

4

"discretionary in nature," actions by a government actor must "involve an 'element of judgment or choice'" and must not be "compelled by statute or regulation." *Molchatsky v. U.S.*, 713 F.3d 159, 162 (2d Cir. 2013) (quoting *Gaubert*, 499 U.S. at 322-23).

Section 4042(a) of Title 18 of the United States Code requires the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]"  However, the government argues that the discretionary function exception applies to Russo's claim because BOP employees' actions in handling inmate safety are policy-based decisions and related to limited resource allocation.  Doc. 24 at 10-11 (citing *Ortiz v. U.S.*, No. 01 Civ. 4665 (AKH), 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002) for the proposition that safekeeping and care duties imposed on BOP officials are left to their discretion as the applicable statute "addresses only the general responsibilities of BOP employees[.]").

Russo argues that § 4042(a) establishes a duty of care and therefore the assertion that his claim is barred by the discretionary function exception is premature.  Doc. 26 at 3-4.  Russo further argues that the discretionary function exception is inapplicable to this situation because there are specific regulations that the BOP is required to follow when handling contraband in prisons.  Specifically, Russo notes that

> 28 C.F.R. §§ 552.10, 552.11 and 552.14 comprise an authorization for "searches on inmates and of inmate housing and work areas to locate contraband and to deter its introduction and movement" and an outline of how such searches are to be conducted.  The Attorney General of the United States is authorized, pursuant to 18 U.S.C. § 1791, to promulgate rules and regulations prohibiting the bringing of contraband into federal penal facilities.  The regulation codified as 28 C.F.R. § 6.1 delegates to the warden or superintendent of each federal prison the authority to enforce the statute.

*Id*. at 4.

The Court agrees with the government that § 4042(a) does not provide a set of specific instructions on how the BOP should fulfill its responsibilities.  Rather, as the excerpt from Russo's brief amply demonstrates, § 4042(a) "merely outlines the general

5

responsibilities of the BOP and leaves the BOP with 'judgment or choice' in determining the proper course to fulfill these objectives." *Paulino-Duarte v. U.S.*, No. 02 Civ. 9499 (RCC), 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) (granting the government's motion to dismiss plaintiff's FTCA claim that the BOP was negligent in failing to install guardrails on bunk beds and to provide the plaintiff with a lower bunk as barred by the discretionary function exception).

Moreover, Russo's argument that the so-called negligent guard theory applies to his claim as an exception to the discretionary function exception fails. Doc. 26 at 5. Under this theory, a BOP official's careless or lazy failure to fulfill their duties is not a discretionary act resulting from policy decision-making. *Coulthurst v. U.S.*, 214 F.3d 106, 109-11 (2d Cir. 2000); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475-77 (2d Cir. 2006). If there is a situation where "[a government] official has been careless or inattentive in the execution of her responsibilities, reliance by the government on that official's general discretionary authority is no bar to suit." *Hartman v. Holder*, No. 100 Civ. 6107 (ENV) (JMA), 2009 WL 792185 at *10 (E.D.N.Y. Mar. 23, 2009).

In *Coulthurst*, the plaintiff was a federal prisoner who injured his shoulders, back, and neck while using weightlifting workout equipment at the prison's gymnasium. 214 F.3d at 107. The plaintiff alleged that the government "failed to diligently and periodically inspect the weight's equipment" and "failed to replace the cable after undue wear and tear." *Id.* at 109-10. The Second Circuit held that "if the [prison gym equipment] inspector failed to perform a diligent inspection out of laziness or was carelessly inattentive, the discretionary function exception does not shield the United States from liability." *Id.* at 110. A prison official's decision to fail to inspect machines or to alert others about known damaged equipment is not a discretionary act resulting from public policy considerations. *Id.* at 111 (citing *Gaubert*, 499 U.S. at 323).

In *Triestman*, the plaintiff was an inmate at a facility where employees were specifically instructed to attend to inmates at all times under a "continuous staff coverage"

mandate. 470 F.3d at 472. The mandate required prison officials to "provide 'continuous staff coverage' to" and not to "leave 'unattended,' any inmate in a locked housing unit who does not have access to an emergency 'signaling device.'" *Id*. The plaintiff got into a physical altercation with a fellow inmate in their shared cell and did not receive immediate help from prison officers even after yelling for help. *Id*. at 473. Triestman alleged that the prison did not follow the continuous staff mandate because there were long periods of time between cell checks where "the inmates are entirely beyond earshot of the guard." *Id*. The Second Circuit ruled that negligent guard theory could potentially be applicable and consequently remanded the case back to the district court. *Id.* at 477.

By contrast, in *Winters v. U.S.*, the plaintiff inmate brought various FTCA claims for negligence in connection with injuries sustained in two physical altercations with another inmate. No. 10 Civ. 7571 (JMF), 2013 WL 1627950, at *1 (S.D.N.Y. Apr. 16, 2013). Winters was attacked by a fellow inmate with a hot liquid, heated by using the facility's microwave, but he did not immediately report this incident to authorities. *Id*. at *1. Minutes later, the Winters got in a physical fight with the same inmate until a corrections officer finally intervened. *Id*. at *1. The court determined that the negligent guard theory did not apply because BOP had no prior information to infer the possibility of a fight and prison officials immediately responded to the fight when it occurred. *Id*. at *7; *see also Morrison v. U.S.,* No. 17 Civ. 6779, 2019 WL 5295119, at *7 (S.D.N.Y. Oct. 18, 2019) and *Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002).

The Court finds that the negligent guard theory does not apply here because, as in *Winters*, there is no information to suggest that BOP knew about the possibility of a physical conflict between Russo and the other inmate before the fact.

The Court concludes that the discretionary function exception under the FTCA applies and that the negligent guard theory is inapplicable on the facts presented. Accordingly, the Court does not have subject matter jurisdiction.

7

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

Even if the Court did have subject matter jurisdiction, this matter would still be dismissed for failure to state a claim. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Christie's Int'l PLC,* 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly,* 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

"[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Green v. Beer*, No. 06 Civ. 4156 (KMW) (JCF), 2009 WL 3401256 at *2 (S.D.N.Y. Oct. 22, 2009) (citing *Iqbal*, 556 U.S. at 678). Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

8

### B. Analysis

The government argues that Russo fails to state a claim for negligence.[2] In the first instance, the government argues that "the Court need not accept as true the conclusory allegations of negligence in the Amended Complaint." Doc. 28 at 7 (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)). Russo claims that his allegations are not conclusory but rather his best recollections and memories about the assault, considering his injuries, and that he needs discovery to further support his claims. Doc. 26 at 2-3. The Court finds that Russo's allegations are conclusory. For example, Paragraphs 26 and 27 of the Amended Complaint state that the assault against Russo and his resulting injuries were direct results of the BOP's negligence. Doc. 22 ¶¶ 26-27. However, these are legal conclusions that the Court is not required to credit. As the government argues in reply, Russo does not offer any information on how the actions or inactions of BOP employees led to his physical assault. Doc. 28 at 8-9.

The government also argues that Russo fails to state a claim for negligence under New York State law. Doc. 24 at 11-15. As the government states, "[t]he FTCA's waiver of sovereign immunity is limited to 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id*. at 11 (citing 28 U.S.C. § 1346(b)(1)). An individual must turn to state substantive law to state a cause of action, such as negligence, under the FTCA. *Id*. at 11-12. "Liability for negligence is governed by New York State law, which requires the 'plaintiff [to] demonstrate (1) a duty owed by the government to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Tavarez v. BJ's*

---

[2] The government argues that there are inconsistencies in the Amended Complaint as Russo alleges the BOP did not effectively address the smuggling and usage of K-2 in MCC, but also alleges that the BOP had begun to address the issue by, for example, removing vending machines to prevent the storing of smuggled K-2. Doc. 24 at 7. The Court does not agree that the claims are inconsistent as Russo did not allege that the BOP implemented no K-2 resolutions, but rather that they failed to implement effective K-2 resolutions. Doc. 22 ¶ 24.

*Wholesale Club, Inc.*, No. 16 Civ. 1780 (ER), 2018 WL 2089338, at *3 (S.D.N.Y. May 3, 2018) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)).

The Court finds that Russo fails to state a claim for negligence. First, there is no dispute that BOP owed a duty of care to Russo. As stated in *Morrison,* "[i]n New York, a correctional facility 'owes a duty of care to safeguard inmates, even from attacks from fellow inmates.'" 2019 WL 5295119, at *7 (quoting *Sanchez*, 784 N.E.2d at 678). In regards to the second element, the government argues that it did not breach its duty because Russo's injuries were not reasonably foreseeable. For example, Russo does not offer any evidence to indicate that the perpetrator actually ingested K-2 prior to the time that he confronted him or that prison guards would or should have known that Russo planned to confront the other inmate. Doc. 28 at 2. Russo also fails to provide information that the government's alleged negligence "substantially caused his injuries." *Id*. at 4. In *Morrison*, the court ruled that the BOP breach of its duty of care to an inmate was failing to protect him from harm within the prison. 2019 WL 5295119, at *7. But in that case, the complaint alleged that the BOP had been negligent in their protective and hiring practices and that the inmate had been harassed and threatened by a BOP employee before he was beaten to death by an unknown actor; thus, the harm he ultimately suffered was "within the class of reasonably foreseeable hazards that the duty exists to prevent." *Id.* at *6-7 (quoting *Sanchez*, 784 N.E.2d at 678).

Unlike in *Morrison*, Russo does not provide similar evidence that suggests officials at MCC knew or should have known about the risk of a physical altercation with another inmate who may or may not have been using K-2. *See* Doc. 22.

Therefore, because Russo has not adequately alleged foreseeability, he is unable to fulfill the three-factor element negligence standard required under New York State law.[3]

---

[3] Additionally, because Russo has not sufficiently stated a claim for negligence under New York law, he has failed to state a tort as required to bring a claim under the FTCA. The government is correct that, without a valid cause of action, Russo has not brought a colorable FTCA claim and the waiver of sovereign immunity does not apply.

## IV. JURISDICTIONAL DISCOVERY

In the alternative, Russo moves for leave to conduct jurisdictional discovery. Doc. 25. That request is denied. The Second Circuit has held that a plaintiff who is unable to state a *prima facie* case for jurisdiction is not entitled to jurisdictional discovery. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998). "District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (collecting cases). The decision of whether to allow jurisdictional discovery is left to the Court's discretion. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (citing *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 175 (2d Cir. 1998)). The Court therefore denies Russo's request for jurisdictional discovery.

## V. CONCLUSION

For the foregoing reasons, the government's motion to dismiss is GRANTED. Russo's motion for jurisdictional discovery is DENIED. If Russo wishes to file a second amended complaint, he is directed to do so by December 10, 2021.[4] The Clerk of the Court is respectfully directed to terminate the motions, Docs. 23 and 25.

It is SO ORDERED.

Dated: November 18, 2021
        New York, New York

                                                   Edgardo Ramos, U.S.D.J.

---

[4] Although Russo has not specifically requested further leave to amend, Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The "usual practice" in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446–47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). Because it is possible that Russo can plead additional facts to remedy some of the deficiencies identified in this opinion without prejudice to the government, he is granted leave to amend.