UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT RUSSO,

                Plaintiff,

– against –

UNITED STATES OF AMERICA,

                Defendant.

**OPINION & ORDER**

20 Civ. 4999 (ER)

Ramos, D.J.:

    Robert Russo brings this suit under the Federal Tort Claims Act ("FTCA") alleging negligence by the Federal Bureau of Prisons ("BOP") of the United States Department of Justice for its failure to prevent an assault against him by another inmate and, more broadly, to stop the smuggling and use of the drug K-2 within the Metropolitan Correctional Center ("MCC"). Doc. 30. On November 18, 2021, the Court dismissed Russo's Amended Complaint, Doc. 22, with leave to amend. Doc. 29. Russo filed a Second Amended Complaint ("SAC") on December 10, 2021. Doc. 30. Before the Court are (1) the government's motion to dismiss the SAC for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and (2) Russo's motion for jurisdictional discovery. Docs. 34, 41. For the reasons set forth below, the government's motion is GRANTED and Russo's motion is DENIED.

**I.    BACKGROUND**

    **A.  Factual Background**

    The Court assumes familiarity with its prior Opinion and Order, dated November 18, 2021. Doc. 29. For present purposes, the Court provides an abbreviated summary. Russo alleges that, on July 10, 2017, while he was an inmate at the MCC in New York, he verbally confronted another inmate about smoking K-2, a type of synthetic marijuana.

Doc. 30 ¶ 11. He alleges that later that day, that inmate physically assaulted him and that, as a result of the assault, he suffered serious injuries, including facial fractures. *Id.* ¶¶ 17, 28. Russo argues that the BOP failed in its duty to prevent the assault and to provide for the safety of its inmates by not quickly and effectively dealing with the problems brought on by the smuggling and use of K-2 at the MCC. *Id.* ¶ 27.

In addition to the above allegations—which are consistent among his three complaints—Russo includes additional facts in his SAC. First, he provides the name of the inmate who physically assaulted him: James Pedroso. *Id.* ¶ 11. Second, Russo alleges that MCC employees were aware that Pedroso was a user of K-2. *Id.* ¶ 21. Third, he alleges that the K-2 at the MCC was smuggled in primarily by visitors. *Id.* ¶ 12. Fourth, he alleges that Pedroso had an excessively large number of people come visit him at the jail, which he concludes should have given MCC staff reasonable grounds to suspect Pedroso was receiving contraband, including K-2. *Id.* ¶ 22. And fifth, he alleges that, on the day of his assault, Pedroso argued for approximately twenty minutes with him and with several other inmates. *Id.* ¶ 16.

Russo alleges that after he confronted Pedroso about using K-2, Pedroso threatened him. Doc. 42-2 ¶ 3. According to Russo, a BOP counselor named Hill, having overheard the altercation and Pedroso's threat, ordered Pedroso to return to his cell on Tier 12, a different floor of the MCC; Pedroso left the area while Russo remained on his floor, Tier 9.[1] *Id.* At some point shortly thereafter, Russo went to Tier 12 to play a game of cards under the belief that Pedroso would be in his cell. *Id.* ¶ 4. However, when he arrived on Tier 12, Pedroso was not confined to his cell and, as a result was free to assault him.[2] *Id.*

---

[1] Russo does not provide the counselor's first name and identifies her only as Hill.

[2] For the first time in the declaration he submits in support of his opposition to the government's instant motion, Russo provides additional details explaining the events leading up to his assault. These facts include that Russo confronted Pedroso about using K-2 during the twenty-minute verbal altercation, that

### B.  Procedural History

Russo filed a claim for money damages with the BOP on July 8, 2019, asserting claims under the FTCA.  Doc. 30 ¶ 4.  On January 3, 2020, the BOP denied Russo's claim.  *Id.* ¶ 5.

On June 30, 2020, within six months of the denial of his claim, Russo brought the instant suit.  Doc. 1.  On February 22, 2021, he filed an Amended Complaint.  Doc. 22.  On March 17, 2021, the government moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, Doc. 23, and on April 6, 2021, Russo moved for jurisdictional discovery, Doc. 25.  On November 18, 2021, the Court granted the government's motion to dismiss primarily on the grounds that the discretionary function exception under the FTCA applies while the negligent guard theory, an exception to the discretionary function exception, does not, and that Russo failed to adequately allege foreseeability as an element of negligence by the BOP.  Doc. 29.  The Court also granted Russo leave to amend.  *Id.*

On December 10, 2021, Russo filed his SAC.  Doc. 30.  On February 1, 2022, the government moved once again to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Doc. 34.  On March 22, 2022, Russo again moved for jurisdictional discovery.  Doc. 41.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or

---

Pedroso threatened him, that a BOP counselor overheard Pedroso's threat, that Russo later went to Tier 12 to play a game of cards, and that BOP employees should have been aware that, according to the 2017 Edition of a Drug Enforcement Administration publication titled *Drugs and Abuse*, one of the effects of K-2 is violence after smoking.  However, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The Court, here, is not required to look to the facts alleged for the first time in Russo's declaration.  In any event, these facts, even when considered, do not change the Court's analysis or conclusion.

constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe–Woodbury Cent. School Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012) (citations omitted), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

**B. Analysis**

The government argues that the SAC failed to cure the deficiencies in the Amended Complaint and that, accordingly, this Court lacks subject matter jurisdiction, as the government is immune from suit under the discretionary function exception to the FTCA.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's

4

jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113 (citations omitted). As established by the FTCA, the United States consents to suit, and thus waives its sovereign immunity, in actions for money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1); *see also Fountain v. Karim*, 838 F.3d 129, 131 (2d Cir. 2016).

There is, however, an exception to that waiver known as the discretionary function exception. *See Needham v. United States*, No. 17 Civ. 05944 (ER), 2018 WL 3611944, at *2 (S.D.N.Y. July 27, 2018). The discretionary function exception shields the government from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* (quoting 28 U.S.C. § 2680(a)).

In order to meet the discretionary function exception, the behavior of the government actor must, first, be "discretionary in nature" and, second, must be related to the purpose of the discretionary function exception, such as behaviors related to public policy. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). In order to be "discretionary in nature," actions by a government actor must "involve an 'element of judgment or choice'" and must not be "compelled by statute or regulation." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (quoting *Gaubert*, 499 U.S. at 322–23).

There is, in turn, an exception to the discretionary function exception, known as the negligent guard theory. Under this theory, a BOP official's careless, inattentive, or lazy failure to fulfill their duties is not a discretionary act resulting from policy decision-making. *Coulthurst v. United States*, 214 F.3d 106, 109–11 (2d Cir. 2000); *see also*

5

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475–77 (2d Cir. 2006).  Instead, if there is a situation where "[a government] official has been careless or inattentive in the execution of her responsibilities, reliance by the government on that official's general discretionary authority is no bar to suit." *Hartman v. Holder*, No. 100 Civ. 6107 (ENV) (JMA), 2009 WL 792185, at *10 (E.D.N.Y. Mar. 23, 2009).  Therefore, where a plaintiff was harmed by an act or omission of a federal defendant that was "out of laziness or [] careless[] inattentive[ness]," the discretionary function exception to the FTCA does not apply.  *Coulthurst*, 214 F.3d at 110; *see also Triestman*, 470 F.3d at 475.

At issue here, then, is first whether, as the government argues, the discretionary function exception applies and second, as Russo argues, whether the negligent guard theory applies to negate that exception.

First, the Court finds it clear that the BOP employees in this case qualify for the discretionary function exception.  "Courts have consistently held that the decision as to how to respond to inmate violence is one grounded in policy considerations."  *Banks v. United States*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *14 (S.D.N.Y. Sept. 15, 2011), *report and recommendation adopted*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011) (citation omitted).

Here, BOP counselor Hill, after allegedly overhearing the verbal altercation between Russo and Pedroso, including Pedroso's threat, separated Russo and Pedroso by instructing Pedroso to return to his cell on Tier 12.  This decision to separate the two "was not so far outside the range of appropriate judgment that [it] can no longer be viewed as an exercise of discretion." *Chen v. United States*, No. 09 Civ. 2306 (ARR), 2011 WL 2039433, at *10 (E.D.N.Y. May 24, 2011), *aff'd*, 494 F. App'x 108 (2d Cir. 2012) (quoting *Enigwe v. Zenk*, No. 03 Civ. 854 (CBA), 2007 WL 2713849, at *9 (E.D.N.Y. Sept. 14, 2007)) (internal quotation marks omitted).  The Court thus finds the BOP's response was sufficiently grounded in public policy considerations, and, as a result, the discretionary function exception applies.

Second, the Court finds that the negligent guard theory—the exception to the discretionary function exception—does not apply here.  Russo's argument is premised on the failure of BOP employees to ensure Pedroso returned to and remained in his cell when he posed an especially high risk of violence due to his use of K-2.  But Russo does not allege any facts showing his injuries resulted from a BOP employee's laziness or careless inattentiveness.  As set out above, following the altercation between Russo and Pedroso, a BOP employee separated them, sending Pedroso to his cell on a separate floor.  Only after this separation did Russo travel to Tier 12—where Pedroso was—to play cards.

In other words, it is clear from Russo's allegations that he was assaulted not because the BOP failed to anticipate the assault or to intervene—the BOP *did* intervene— but because he chose to travel to Tier 12, where he knew Pedroso had been sent.  Russo does not allege facts suggesting BOP employees knew or should have known he would go to Tier 12 and encounter Pedroso again and, in any event, he cannot show that any unawareness resulted from laziness or carelessness.

Russo argues in conclusory fashion that the BOP employees knew Pedroso had ingested K-2 and that K-2 can cause its user to become violent.  But this argument ignores the fact that the altercation only happened after Russo went to Tier 12 following their separation.  And, in any event, Russo does not offer any evidence to indicate that Pedroso actually ingested K-2 prior to the time that he confronted him or that BOP employees knew or should have known that Pedroso had ingested K-2.  Because Russo cannot show that BOP employees were careless, inattentive, or lazy in their response to Pedroso's threat, the negligent guard theory does not apply.  Thus, the discretionary function exception applies and the Court does not have subject matter jurisdiction.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

Even if the Court did have subject matter jurisdiction, this matter would still be dismissed for failure to state a claim. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Green v. Beer*, No. 06 Civ. 4156 (KMW) (JCF), 2009 WL 3401256, at *2 (S.D.N.Y. Oct. 22, 2009) (citing *Iqbal*, 556 U.S. at 678). Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 556 U.S. at 679).

### B. Analysis

First, the government again argues that Russo fails to state a claim for negligence because his allegations are conclusory.[3] In its prior Opinion, the Court found Russo's allegations to be conclusory because he did not offer any information on how the actions or inactions of BOP employees led to his physical assault. Doc. 29 at 9. While given another opportunity to do so, Russo again does not provide sufficient factual allegations to support the claim that his assault was caused by BOP employees. As previously explained, BOP employees acted to protect Russo following the verbal altercation by sending Pedroso to his cell on a different floor. And Russo has not alleged sufficient facts to establish that BOP employees should nevertheless have expected that he and Pedroso would encounter one another again that day.

More specifically, Paragraphs 29 and 30 of the SAC are nearly exact repetitions from the Amended Complaint alleging the assault against Russo and his resulting injuries were direct results of the BOP's negligence. Doc. 30 ¶¶ 29, 30. As before, these are legal conclusions that the Court is not required to credit because Russo has not offered sufficient information on how the actions or inactions of BOP employees led to his physical assault. Additionally, Paragraph 22 of the SAC, an allegation new to this complaint, states that staff at the MCC should have suspected Pedroso was receiving contraband because he "had an inordinately large number of visitors come to see him at the jail." *Id.* ¶ 22. This too is conclusory. Without further details or more specific facts that could explain the connection between contraband and the number of visitors, the

---

[3] Like in its first motion to dismiss, the government argues that there are inconsistencies in the SAC because Russo alleges the BOP did not effectively address the smuggling and usage of K-2 in MCC, but also alleges that the BOP had begun to address the issue by, for example, removing vending machines to prevent the storing of smuggled K-2. Doc. 35 at 12. Because Russo has not alleged any substantially different facts regarding the smuggling and usage of K-2 or the BOP removing vending machines to prevent the storing of smuggled K-2, the Court once again disagrees that Russo's claims are inconsistent.

Court is not convinced that there exists a connection between the two. Thus, the Court cannot credit, as Russo alleges, that MCC employees should have suspected he was receiving contraband based on an allegedly large number of visitors Pedroso received.

Even assuming Russo's allegations were sufficiently specific, his negligence claim nonetheless fails as he has not adequately alleged foreseeability as required for a negligence claim under New York State law. "The FTCA waives the federal government's sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005) (quoting 28 U.S.C. § 1346(b)(1)). An individual must turn to state substantive law to state a cause of action, such as negligence, under the FTCA. *Id.*; *see also Makarova*, 201 F.3d at 114. "To prevail on a claim of negligence under New York law, a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach." *Qin Chen*, 494 F. App'x at 109 (citation omitted).

In its prior Opinion, the Court noted that Russo did not provide sufficient evidence suggesting that officials at the MCC knew or should have known about the risk of a physical altercation with another inmate who may or may not have been using K-2. Doc. 29 at 10. Russo submits two additional facts in an attempt to show that his injuries were reasonably foreseeable. First, that a BOP employee overheard him being threatened by Pedroso prior to the assault. Second, that according to the 2017 Edition of a Drug Enforcement Administration publication titled *Drugs and Abuse*, one of the effects of K-2 is "violence after smoking." Doc. 42-3. Russo thus concludes that the BOP had constructive notice—through the publication of a separate government agency—that Pedroso might have a physical altercation with another inmate.

Even considering these allegations, the facts alleged do not support the inference that the BOP should have reasonably expected Pedroso to assault Russo or anyone else,

10

particularly given the two intervening events initiated by Russo—he confronted Pedroso about using K-2, and then went to Pedroso's floor after the two had been separated. In sum, Russo does not offer any evidence to indicate that Pedroso actually ingested K-2, does not offer any evidence to indicate the BOP employees should have known that he planned to confront Pedroso about ingesting K-2, and does not offer any evidence that BOP employees should have known that he would go to Tier 12 after Pedroso had just been sent there.

Therefore, because Russo has not adequately alleged foreseeability, he is again unable to fulfill the three-factor negligence standard required under New York State law.[4]

### IV.   JURISDICTIONAL DISCOVERY

In the alternative, Russo moves for leave to conduct jurisdictional discovery with the possibility of filing a third amended complaint. "In determining whether to allow limited discovery of jurisdictional facts . . . courts have been guided by Rule 56(f)." *Keren Chasanim Corp. v. Vill. of Kiryas Joel*, No. 07 CIV. 262 (SCR), 2008 WL 11518871, at *5 (S.D.N.Y. Nov. 10, 2008) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). "[C]ourts generally require that plaintiffs be given an opportunity to conduct discovery on . . . jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi*, 385 F.3d at 244 (citing *Kamen*, 791 F.2d at 1011).

Whether to allow jurisdictional discovery is "a decision as to which a district court enjoys substantial discretion." *Keren Chasanim Corp.*, 2008 WL 11518871, at *5. Additionally, a "plaintiff is not . . . entitled to jurisdictional discovery if it cannot show that the requested discovery is likely to produce the facts needed to withstand a Rule

---

[4] Additionally, because Russo has not sufficiently stated a claim for negligence under New York law, he has failed to state a tort as required to bring a claim under the FTCA.

11

12(b)(1) motion." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013) (internal quotation marks and citation omitted).

It is the burden of the party asserting subject matter jurisdiction to establish that jurisdiction exists. *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). After three failed attempts to provide sufficient facts to state a cause of action, Russo fails to explain why the requested discovery is likely to help establish that the Court has jurisdiction over this matter. The Court therefore denies Russo's request for jurisdictional discovery.

## V. CONCLUSION

For the foregoing reasons, the government's motion to dismiss is GRANTED with prejudice. Russo's motion for jurisdictional discovery is DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 34 and 41, and close the case.

It is SO ORDERED.

Dated: July 21, 2022
       New York, New York

                                              Edgardo Ramos, U.S.D.J.